THE M. & M. R. R. Co. v. THE S. C. & ST. P. R. Co. ET AL.

1. **Arbitration and Award: WHEN NOT FINAL.** An award by an arbitrator who, by the terms of the submission, is empowered and required to determine all questions at issue, may be set aside if it is not final and conclusive of the rights of the parties.

2. **Public Lands: RAILROADS : FORFEITURE.** Where lands were conferred upon a railroad company by the Legislature of the State of Iowa, upon the conditions that the company should receive them in installments as the work of construction progressed, and that, if the road were not completed to a designated point at the time specified, then the State might resume the rights conferred by the act making the grant, it was *held* that, even in the absence of an act of the Legislature after a default by the railroad company, the latter, by reason of a noncompliance with the conditions, did not possess any rights which could be enforced in the courts.

*Appeal from Osceola Circuit Court.*

THURSDAY, DECEMBER 5.

ACTION in chancery.

The original petition was filed October 11, 1873. It shows that plaintiff was originally organized under the name of The McGregor & Sioux City Railway Company, which, in 1869, was changed to its present style; that on the 28th day of April, 1868, the McGregor Western Railway Company transferred and assigned to plaintiff all its claim, right and interest to and in the lands granted by act of Congress of May 12, 1864, to the State of Iowa, for its use and benefit, and that by act of the Twelfth General Assembly of the State, approved March 31, 1868, the lands granted by the act of Congress just named were conferred upon plaintiff, and duly accepted.

It is shown in the petition that on the 19th day of August, 1864, the McGregor Western Railway Company located its line of railroad from McGregor to Calmar, in Winneshiek county, and thence westward through the counties of Chicka-

saw, Floyd, Cerro Gordo, Hancock, Kossuth, Palo Alto, and Clay, to a point in O'Brien county, in section 19, township 95 north, range 40 west. A map of this location was filed in the general land office of the United States on the 30th of August, 1864, and on the 12th day of the following month all lands designated by odd-numbered sections, within twenty miles of either side of the line as located, not disposed of by the United States, were, pursuant to the act of Congress aforesaid, withdrawn from market.

It is further shown in the petition that on the 2d day of April, 1867, the defendant, the Sioux City & St. Paul Railroad Company, located its line of railroad from the south line of the State of Minnesota, in range 40 west, to Le Mars, in Plymouth county, a point in township 92 north, range 45 west. This line barely crossed the north-west corner of O'Brien county, and the most westerly point thereof was ten miles north and twelve miles west of section 19, township 95 north, range 40 west, to which plaintiff's road had before been located. A map of this location was filed by the Sioux City & St. Paul Railroad Company in the general land office of the United States on the 17th day of July, 1867. It is alleged that this company had, before and after this location, recognized another line of its road as the one upon which it would probably be built, which ran so as to touch the point to which plaintiff has located its road as above stated.

It is further shown that in the winter of 1868–9 the plaintiff, in pursuance of an order of the commissioner of the general land office, relocated its road so as to intersect the defendants' location at a point now designated on the map as Sheldon. This was done in order to reach defendants' road in O'Brien county, as it was then located.

It is averred that the State has never selected, nor has it been requested so to do by the Sioux City & St. Paul Railroad Company, a point upon the south line of the State of Minnesota as the terminus of its railroad, according to the act of Congress making the grant of lands.

Plaintiff alleges in its petition that in 1865 it or its assignor, the McGregor Western Railway Company, completed, as required by the act of Congress, its road to Calmar, in Winneshiek county, a distance of forty-two miles, and in October, 1870, it had completed its road to Algona, in Kossuth county, a distance of one hundred and seventy-two miles. It avers its intention to construct the remainder of the road from Algona to the point of intersection of the Sioux City & St. Paul Railroad in O'Brien county.

The plaintiff charges that the Sioux City & St. Paul Railroad Company has constructed no railroad from the Minnesota line to Sioux City, as required by the act of Congress under which it and plaintiff claim the lands granted thereby, but that in the year 1872 it built a railroad from the State line to Le Mars, a distance of about sixty miles, and from Le Mars to Sioux City, a distance of twenty-four miles, it uses the track of another railroad company. The whole length of plaintiff's line of road to the point of intersection with the Sioux City & St. Paul Railroad is two hundred and fifty-six miles, leaving eighty-six miles unfinished between Algona and Sheldon.

It is shown that but an inconsiderable quantity of land is subject to the grant of the act of Congress above referred to, which is situated east of Kossuth county. West of the east line of that county there remain seven hundred and sixty odd-numbered sections subject to the grant. Of these lands two hundred and eighty-five sections lie within twenty miles on each side of both plaintiff's and defendants' lines of road, and are claimed by both companies. These lands are described in an exhibit to the petition.

It is shown that on the 9th day of June, 1873, the commissioner of the general land office of the United States certified these lands to the Secretary of the Interior of the United States as lands enuring to the state of Iowa in aid of the construction of the Sioux City & St. Paul Railroad, and on the next day the Secretary of the Interior approved said

certificate, and caused a patent to be issued to the State for the lands for the use of the Sioux City & St. Paul Railroad. It is alleged that the certificate and patent were issued "wrongfully, unlawfully, and mistakenly." The petition shows that the Sioux City & St. Paul Railroad Company has executed a deed of trust upon all its lands to secure certain bonds issued by the corporation, and defendants Alexander H. Rice and E. F. Drake are made trustees by said conveyance.

The plaintiff charges that the defendants C. C. Carpenter, Governor of the State, and Aaron Brown, register of the State land office, are about unlawfully to issue to the Sioux City & St. Paul Railroad Company a patent for the lands claimed by plaintiff. Upon the facts alleged in the petition plaintiff claims, as relief, an injunction restraining the officers above mentioned from issuing a patent for the lands to the Sioux City & St. Paul Railroad, and that, by the final decree, the plaintiff's right to the lands be enforced by proper order directing a patent to issue by the State to plaintiff.

The defendants, in their answer, deny the allegations in the petition as to the release and assignment of the McGregor Western Railway to plaintiff, and the acceptance of the grant made by the Act of the General Assembly of March 31, 1868, as required thereby, and as to plaintiff's compliance with the requirements of that statute. It is averred in the answer that the map of the location of its line of railroad filed in the general land office, August 30, 1864, was not based upon any actual survey or location, and did not comply with the requirements of the United States statute. The object of the filing of this map, it is charged, was to mislead and deceive the officers of the government having charge of the lands, and procure the withdrawal of the lands from market. It is also denied that the location, as shown by this map, was treated by defendants as the probable route of the plaintiff's railroad, and that plaintiff was required to relocate its line of road. It is averred that the requirement of the proper authorities of

the land office made upon plaintiff was for the *location*, not the *relocation*, of its road. It is averred that the State empowered the Sioux City & St. Paul Railroad Company to select the point upon the Minnesota State line from which its road should be constructed; such authority being found in the act of the General Assembly granting the lands to that corporation.

The answer denies that the plaintiff, or its assignor, has constructed the railroad as claimed in the petition and as required by the legislation granting the lands, and that plaintiff is entitled to the lands in controversy under the grant.

On the 31st of May, 1875, by an agreement of all the parties then in the case, it was submitted to the Hon. Samuel F. Miller, one of the justices of the United States Supreme Court, as arbitrator, on condition that his award should be made on or before January 1, 1876. May 24, 1876, the award was rendered by the arbitrator, and duly filed on the 29th of the same month. November 21, 1876, upon motion of defendants, the award was stricken from the files of the court.

On the 28th day of December, 1876, in pursuance of leave before granted by the court, plaintiff filed a supplemental petition, setting up the submission and award aforesaid, and praying that a decree be entered in the cause pursuant to the award, which was favorable to plaintiff. A demurrer thereto was sustained.

January 31, 1877, D. C. Hall, Samuel Gould, A. E. Hildreth, J. E. Williams and E. C. Davidson, having been made defendants by a prior order of the court, filed their answer, substantially the same as that of the other defendant. It alleges, further, that, under an act of the General Assembly of March 13, 1874 (chapter 34, Private and Local Laws of Fifteenth General Assembly), the Governor of the State was authorized to execute a patent to the Sioux City & St. Paul Railroad Company for all lands held by the State in trust for that corporation, among which were the lands in controversy.

It is also alleged in the answer of these defendants that the

plaintiff, by failing to build the road as required by law, forfeited all its right and claim to the lands in controversy, under the provisions of the act of 13th March, 1876 (chapter 96, Acts Sixteenth General Assembly); that for the purpose of procuring funds to construct its railroad, the Sioux City & St. Paul Company issued bonds to the amount of two million eight hundred thousand dollars, which are secured by a deed of trust to defendants Rice and Drake, covering the entire quantity of lands granted to it by the acts of Congress and the Legislature of the State, including the lands in controversy; that these bonds are unpaid, and a large amount are held by defendants; that defendants uniting in this answer were not made parties to the action prior to the submission; that the trustees had no authority to submit the matters involved in the suit to arbitration, and that these defendants never acquiesced in the submission and award. It is alleged that the award is void, for the reason that it was rendered after the time prescribed by the terms of the submission, and no lawful extension of the time was ever made by the parties. These defendants, as the others, in their answer, pray that the lands be decreed to the Sioux City & St. Paul Railroad Company, and that it be declared that the plaintiff holds no right or title to them. A demurrer to this answer was overruled.

The cause was submitted to the court upon written testimony and documentary evidence, and a decree was rendered, on the 11th day of October, 1877, dismissing plaintiff's petition and supplemental petition. No affirmative relief was granted defendants further than a judgment for costs. The plaintiff appeals.

*Thos. Updegraff,* for appellant.

*J. H. Swan* and *E. C. Palmer,* for appellees.

*Joy & Wright,* for the bondholders—appellees.

BECK, J.—I. The arbitration and award set up in the supplemental petition first demand our attention, in con-

sidering the questions presented by the record in their natural order. In support of the ruling of the court below sustaining the motion to strike the awa d from the files, several objections are urged against its validity and sufficiency. We find it necessary to consider but one of these objections, which, in our opinion, was well taken.

By the very terms of the submission the arbitrator was empowered and required to determine all questions at issue in the suit, with power to direct the performance of any act by either party necessary to carry into effect his award. It will be discovered that one question only arising in the case was determined by the award. A brief statement of facts will conclusively show the correctness of this position. The act of Congress of May 12, 1864, which will be hereafter more fully set out and discussed, granted alternate sections of land indicated by odd numbers and contiguous to the railroads, to the State of Iowa, for the purpose of aiding in the construction of a railroad from Sioux City to the Minnesota State line, and of another railroad from McGregor to intersect the first named road at a point in O'Brien county. These roads, it was contemplated, were to be built by different corporations. Without a further statement of the provisions of the act, it will be discovered that at and near the point of intersection of the railroads there would occur what is termed in the pleadings and in certain acts of the Legislature touching these lands an "overlapping;" that is, each road would from necessity be required to select odd sections in the same township, and each would be entitled under the terms of the grant, were the other out of the case, to all the odd sections in several townships of land.

It will be readily seen that near the point of intersection of the roads neither could get all the lands it is entitled to under the terms of this grant, if the other is to be permitted to take any. The plaintiff insists that it is entitled to all of the lands; the Sioux City & St. Paul Railroad Company

*1. ARBITRATION and award: when not final.*

makes a like claim for itself. The last named company, however, insists, as has been discovered from attention to the pleadings, that the plaintiff has forfeited its rights under the grant, and is entitled to no part of the lands granted by Congress. The forfeiture, it is claimed, resulted from the failure of plaintiff to comply with the conditions of the grant. Whatever may be the title and right of the Sioux City & St. Paul Company, plaintiff must recover in this action upon the strength of its own title. If it has no right to the lands this action must fail, even though the other corporation has no claim thereto. Under the pleadings plaintiff's rights could be determined only by passing upon the question involving the forfeiture of its rights to the lands granted. A decision that plaintiff was entitled to all or a moiety of the lands in controversy, under the language and construction of the grant, without determining whether it had forfeited its right, would not terminate the case. The award, in such a case, may be disregarded as not definite and final. Morse on Arbitration and Award, 595, 612, and authorities cited. See, also, *Sharp & O'Neal v. Woodbury*, 18 Iowa, 195; *Thompson v. Blanchard*, 2 Iowa, 44.

The arbitrator held, and so awarded, that neither the plaintiff nor the Sioux City & St. Paul Railroad Company were entitled to all of the lands, under the language and construction of the Legislature upon the subject, but each was entitled to an undivided half of the lands when the grants "overlapped." But plaintiff's rights, further than as involved in this question, were not passed upon, and it was not determined by the arbitrator whether it had or had not forfeited all its rights under the grant. It will be readily seen that the finding of the arbitrator may be admitted as correct, yet plaintiff would not be entitled to any part of the lands in controversy. We conclude that the court below correctly set the award aside.

II. We will proceed to inquire as to the right of plaintiff to the lands in controversy. It will be remembered that

these lands are such as are found equally contiguous to the

**2. PUBLIC lands: railroads: forfeiture.** respective railroad corporations that are parties to this suit. No other lands granted to either are in question. A pretty full and particular statement of the legislation, National and State, relating to these lands, becomes necessary.

The act of Congress of July 12, 1864, granted to the State, in the language of the statute, "for the purpose of aiding in the construction of a railroad from Sioux City * * * to the south line of Minnesota, at such point as the State of Iowa may select; * * * also to said State for the use and benefit of the McGregor Western Railroad Company, for the purpose of aiding in the construction of a railroad from * * * South McGregor, in said State, in a westerly direction, * * * * * * * * * * until it shall intersect the said road running from Sioux City to the Minnesota State line, in the county of O'Brien, every alternate section of land designated by odd numbers for ten sections in width on each side of said roads; but in case it shall appear that the United States have, when the lines or routes of said roads are definitely located, sold any section, or any part thereof, granted as aforesaid, or that the right of pre-emption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the Secretary of the Interior to cause to be selected, for the purpose aforesaid, from the public lands of the United States nearest to the tiers of sections above specified, so much land in alternate sections or parts of sections, designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved, or otherwise appropriated, or to which the right of homestead settlement or pre-emption has attached as aforesaid, which lands thus indicated by odd numbers and sections, by the direction of the Secretary of the Interior, shall be held by the State of Iowa for the uses and purposes aforesaid: *Provided*, that the lands so selected shall, in no case,

be located more than twenty miles from the lines of said roads."

The third section of the act contains this provision: "The lands hereby granted shall be subject to the disposal of the Legislature of Iowa for the purposes aforesaid and no other."

Sections 4 and 5 are as follows:

"Section 4. *And be it further enacted*, That the lands hereby granted shall be disposed of by said State for the purpose aforesaid only, and in manner following, namely: When the Governor of said State shall certify to the Secretary of the Interior that any section of ten consecutive miles of either of said roads is completed in a good, substantial, and workmanlike manner, as a first-class railroad, then the Secretary of the Interior shall issue to the State patents for one hundred sections of land for the benefit of the road having completed the ten consecutive miles as aforesaid. When the Governor of said State shall certify that another section of ten consecutive miles shall have been completed as aforesaid, then the Secretary of the Interior shall issue patents to said State in like manner for a like number; and when certificates of the completion of additional sections of ten consecutive miles of either of said roads are, from time to time, made as aforesaid, additional sections of land shall be patented. as aforesaid, until said roads, or either of them, are completed, when the whole of the lands hereby granted shall be patented to the State for the uses aforesaid, and none other: *Provided*, That if the said McGregor Western Railroad Company, or assigns, shall fail to complete at least twenty miles of its said road during each and every year from the date of its acceptance of the grant provided for in this act, then the State may resume said grant, and so dispose of the same as to secure the completion of a road on said line, and upon such terms, within such time as the State shall determine: *Provided further*, That if the said roads are not completed within ten years from their several acceptance of this grant, the said lands hereby granted and not patented shall revert to the State of Iowa for the purpose

of securing the completion of said roads within such time, not to exceed five years, and upon such terms as the State shall determine: *And provided further*, That said lands shall not in any manner be disposed of or encumbered, except as the same are patented under the provisions of this act; and should the State fail to complete said roads within five years after the ten years aforesaid, then the said lands undisposed of as aforesaid shall revert to the United States.

"Section 5. *And be it further enacted*, That as soon as the Governor of said State of Iowa shall file or cause to be filed with the Secretary of the Interior maps designating the routes of said roads, then it shall be the duty of the Secretary of the Interior to withdraw from market the lands embraced within the provisions of this act."

By act of the Legislature of April 3, 1866 (chapter 134, Acts Eleventh General Assembly), the State accepted the grant and assumed the powers and trusts conferred therein.

The Legislature of the State, by act approved March 31, 1868 (Acts Twelfth General Assembly, chapter 58), conferred the lands of the grant upon plaintiff, its name at that time being as indicated in the statute; it has since been changed to the style it uses in this action. The parts of the statute material in our present investigation are as follows:

"Section 1. *Be it enacted by the General Assembly of the State of Iowa*, That all the lands, rights and privileges that are granted to the State of Iowa by an act of Congress approved May 12, 1864, for the purpose of aiding in the construction of a railroad from a point at or near the foot of Main street, South McGregor, in said State, in a westerly direction, by the most practicable route, at or near the forty-third parallel of north latitude, until it shall intersect the proposed railroad running from Sioux City to the Minnesota State line, in the county of O'Brien, in said State of Iowa are hereby granted and conferred to and upon the McGregor & Sioux City Railway Company, a corporation organized under the laws of the State of Iowa. * * * * * * *

"Sec. 2. This grant is made upon the express condition that said railway company shall have constructed and in running order a line of railway as required by the provisions of the act of Congress making said grant to the State, and of this act, upon the most practicable route, on or as near as practicable to the forty-third parallel of north latitude, running within one mile of New Hampton, in Chickasaw county, and running from thence by way of and within one mile of Charles City, Mason City and Algona, until it shall intersect, in the county of O'Brien, in this State, the proposed railroad running from Sioux City to the Minnesota State line.

"Sec. 3. This grant is conferred on the McGregor & Sioux City Railway Company on the further express conditions that in case said company shall fail to have its railway built and completed in good running order as far west as to Chickasaw, in range fourteen, in Chickasaw county, by the first day of September, 1869; or in case said company shall fail to build and complete in good running order at least twenty miles in addition in each and every year thereafter, and the whole of said road by the first day of December, 1875; then, and in case of any such failure, or on failure to comply with any of the conditions of this act, the State of Iowa may at any time resume all rights conferred by this act, and resume all rights to the lands hereby granted, and which may remain undisposed of to said company on account of road actually built in compliance with the terms of this act; *provided*, that if in any one year more road shall be built than is required by this act, it shall be regarded and treated as road built in the next succeeding year or years.

"Sec. 4. This railway shall be constructed upon the usual gauge of other first-class railroads in this State, and shall be constructed and finished in a style and of a quality equal to the average of other first class western railroads.

"Sec. 5. The said company shall be entitled to the benefit of the selections of land already made under the grant to the State of Iowa of lands to aid in the construction of a

railroad from McGregor westward, on or near the forty-third parallel, approved May 12, 1864; and the line located under said grant shall be binding only so far as applicable to said selections.

"Sec. 6.    It is hereby made the duty of the Governor, when ten consecutive miles of railroad have been built in accordance with the provisions of this act, to certify that fact to the Secretary of the Interior, and so on for each consecutive ten miles thereof, as the same shall be completed, and whenever the said McGregor & Sioux City Railway Company shall have completed, in good running order, according to the provisions of this act, its railway to a point within one mile of Charles City, in Floyd county, it shall be the duty of the Governor of this State to cause patents to be issued to said railway company for one hundred and fifty sections of said land, and when the said railway company shall in like manner have completed its railway to the east line of range twenty-two, in Cerro Gordo county, then the said Governor shall cause patents to be issued to said railway company for one hundred and fifty sections of land; and when the said railway company shall in like manner have completed its railway to a point within one mile of Algona, in Kossuth county, then the Governor shall cause patents to be issued to said company for one hundred and fifty sections more of said lands; and when the said railway company shall in like manner have completed its railway to the Little Sioux river, then the said Governor shall cause patents to be issued to said company for all the balance of the lands granted for that purpose; *provided*, that the said railway company shall not convey or encumber any of said lands prior to the time it shall be entitled to patents therefor, as provided in this act; and this act shall not be so construed as to grant to said railway company, or any person or persons whomsoever, any of said lands for any railroad heretofore built."

It appears from the pleading and agreed statement of facts, upon which the cause is submitted for trial, that plaintiff

completed, in 1870, its road to Algona, one hundred and seventy-two miles from McGregor; and that at the time of trial no part of the road from Algona to Sheldon, the intersection of the Sioux City & St. Paul Railroad, had been built.

The State, by chapter 96, Acts Sixteenth General Assembly, resumed the grant made by the act of March 31, 1868, to plaintiff, and again granted it to plaintiff. The material portions of this act are as follows:

"Section 1. That, whereas, the McGregor & Sioux City Railway Company, now known as the McGregor & Missouri River Railway Company, has failed to comply with the conditions and provisions of the Acts of the Twelfth General Assembly of the State of Iowa, approved March 31, 1868, entitled 'An act making a grant of land to the McGregor & Sioux City Railway Company,' now, therefore, all lands, or rights to lands, saving and excepting all those tracts and parcels lying within twenty miles on either side of the located or constructed line of the Sioux City & St. Paul Railroad Company, and within what is known as the 'overlopping [overlapping] limits,' heretofore granted or intended to be granted to the McGregor & Sioux City Railway Company, be and the same are hereby absolutely and entirely resumed by the State of Iowa.

"Sec. 2. That all of said lands and rights to lands be and are hereby granted to and conferred upon the McGregor & Missouri River Railway Company, upon the following express terms and conditions, viz.: That the McGregor & Missouri River Railroad Company, then called the McGregor & Sioux City Railway Company, shall build and construct their railroad from Algona, in Kossuth county, to Emmettsburg, in Palo Alto county, and locate and establish their depot upon the depot grounds of said company, as shown by the town plat of Emmettsburg; thence to Spencer, in Clay county, and locate and establish their depot upon section 7, in township 96, range 36, on or before the 1st day of January, A. D. 1877; and that the said McGregor & Missouri River Railway Company shall build and construct their railroad thence on

the most direct and practicable route to the point of connection, in O'Brien county, within half mile of Sheldon, with the Sioux City & St. Paul Railroad, on or before the 1st day of December, A. D. 1877.    *    *    *    *    *    *

"Sec. 3.    When the said railroad shall be built and constructed to Spencer, in Clay county, then and thereupon the Governor of the State shall patent and transfer to said McGregor & Missouri River Railway Company all the lands conveyed or appertaining to said grant lying east of said point and coterminous with the completed portion of said railroad; and when said railroad shall have been built and constructed to the point of connection, in O'Brien county, with the Sioux City & St. Paul Railroad, then and thereupon the Governor of the State shall patent and transfer to said McGregor & Missouri River Railway Company all the remaining lands belonging to or embraced in said grant appertaining to this line of railroad.

"*Provided*, That before any such patents shall issue the said McGregor & Missouri River Railway Company shall file with the Secretary of State a good and sufficient bond, approved by the Governor, in the sum of fifty thousand dollars, liquidated damages, within sixty days after the passage of this act, conditional upon the faithful performance of the provisions of this act for the completion of said road to the point of connection, in O'Brien county, with the Sioux City & St. Paul Railroad, within the time specified in section two of this act.

"*Provided further*, That if said McGregor & Missouri River Railway Company shall fail to build and construct their railroad within the time specified in this act, then all lands belonging and appertaining to said grant, undisposed of at the date of the passage of this act, shall revert to the State of Iowa, and this provision shall be interpreted to mean all lands under said grant not patented to the said company at the date of the passage of this act by reason of railroad already constructed.

"Sec. 4. The said railroad shall be built upon and subject to all the terms and conditions named in the act of 1868, above cited, save in such respects as said terms and conditions are changed or amended by this act.

"Sec. 5. Should the McGregor & Missouri River Railway Company fail to build and construct their railroad to Spencer, in Clay county, on or before the 1st of January, A. D. 1877, or fail to file the bonds required by this act within the time prescribed, then all lands belonging and appertaining to said grant, undisposed of at the date of the passage of this act, shall revert to the State of Iowa, and this provision shall be interpreted to mean all lands under said grant not patented to the said company at the date of the passage of this act by reason of railroad already constructed; and any other railroad company first filing with the Auditor of State a good and sufficient bond in the sum of fifty thousand dollars, to be approved by the Governor and executive council, as provided in section three, for the faithful performance of the provisions of this act, may be, by advice of the Governor and consent of the executive council, substituted to all the rights and subject to all the provisions of this act to the same extent as if the lands were conferred upon said company and named by this act; and said company shall have the same time as is provided by section two of this act for the building of the road. Said grant shall then enure to the benefit of the Iowa, Dakotah & Black Hills Railroad Company, who shall have the right to file its bonds and accept said grant for thirty days thereafter, subject to the limitations and restrictions hereinbefore or hereinafter provided.

"Sec. 6. Nothing contained in this act shall be so construed as to affect or change the rights of the McGregor & Missouri River Railroad Company, or of the Sioux City & St. Paul Railroad Company, as now existing in relation to lands where their rights conflict or overlap; nor shall this act in any manner affect either company in any pending litigation. * * *"

It will be observed that the lands granted by the act of

Congress of May 12, 1864, for the construction of the railroad from McGregor, were conferred upon the plaintiff by act of the Legislature of March 31, 1868 (Acts Twelfth General Assembly, chapter 58). This grant was declared forfeited, and the lands were "resumed" by the act of March 15, 1876 (Acts Sixteenth General Assembly, chapter 96). By the same act the lands were again granted to plaintiff upon the conditions, among others, that its road should be constructed to Spencer, in Clay county, on or before the 1st day of January, 1877, and completed to the point of intersection with the Sioux City & St. Paul Railroad on the 1st day of December, 1877. The act expressly declares that if plaintiff "fail to build and construct their road to Spencer, in Clay county, on or before the 1st of January, A. D. 1877, or fail to file the bonds required by this act within the time prescribed, then all the lands belonging and appertaining to this grant, undisposed of at the date of the passage of this act, shall revert to the State of Iowa, and this provision shall be interpreted to mean all lands under said grant not patented to the said company at the date of the passage of this act by reason of railroad already constructed." Section 5. See, also, section 3.

By an agreed statement of facts, signed by the respective counsel of the parties, August 15, 1877, and submitted to the court upon the trial, in order to dispense with the introduction of testimony upon this point, it is shown that plaintiff has constructed no road since the passage of the act of the Legislature last referred to, and has, in fact, built no part of its road since December 5, 1870.

In view of these statutes and the facts just stated plaintiff is not entitled to relief. It fails to show that it has any right to the lands. Having failed to comply with the conditions of the grants under the acts of the Legislature (Acts Twelfth General Assembly, chapter 58, and Acts Sixteenth General Assembly, chapter 96), under the very express terms of these acts its rights are forfeited.

If it should be held that a forfeiture will not occur until it

be declared by an act of the Legislature, in that case the courts would not enforce plaintiff's claim to the land, for it would appear that plaintiff had no right which it could enforce against the state. This proposition is obvious, and does not demand argument for its support.

It is proper to remark that there has been brought to our attention, of which we will judicially take notice, the act of the Seventeenth General Assembly, chapter 21, which "resumes" all the lands granted to plaintiff, and confers them upon another railroad corporation. This grant expressly includes the lands in controversy, designating them as lands "embraced within the overlapping or conflicting limits" of the two grants made by the act of Congress, May 12, 1864. This statute was enacted after the trial of this cause in the court below. We give it no consideration in the decision of this case, as our conclusions cannot be questioned under the previous statutes, and the facts of the case found in the record.

It is insisted by plaintiff that the lands in question, being within the "overlapping" limits, were, by the express terms of section 1, chapter 96, Acts Sixteenth General Assembly, excluded from the operation of that statute and were not "resumed." Let this be admitted. Plaintiff, in that case, must rely upon the grant under the act of March 31, 1868, Acts Twelfth General Assembly, chapter 58. That grant is upon the condition, among others, that the railroad shall be wholly completed by the first day of December, 1875. It provides that in case plaintiff fails to perform this and other conditions, "the State of Iowa may at any time resume all rights conferred by this act, and resume all rights to the lands hereby granted, and which remain undisposed of, to said company on account of road actually built in compliance with the terms of this act." Section 3. The plaintiff failed to complete the road to the terminus within the time prescribed by this act. While the state has not "resumed" the lands in the "overlapping" limits, plaintiff is in the precise condition in respect to them, under the provisions of this act, as it would

be under the act of the Sixteenth General Assembly, chapter 96, were it applicable to the lands in question. It is in default as to the conditions of the grant, and cannot call upon the courts to enforce its claim, for by non-performance of the conditions it has lost all rights to the lands. After default on the part of plaintiff, and before an act of "resumption" of the lands by the State, plaintiff has no interest or right in the lands that the courts will enforce.

But it may be said that plaintiff or its assignor has earned the lands in question by building portions of the road east of Algona, and that these lands may not, therefore, be regarded as "undisposed of," and the State cannot, in that view, resume them. The statute will not admit of such interpretation. The language of section 3, above quoted, reserving the right to the State to "resume" all lands "which may remain undisposed of to said company," cannot be construed to mean that where the lands are earned by the building of a part of the road they are then "disposed of." The grant under the act cannot be a *disposition* of the lands. If it should be so regarded then the State could "resume" no part of them. The *earning* of the lands is no *disposition,* for it in no manner affects the title to the lands; it remains still in the State, and by the terms of the act is to be passed to the railroad company by patents. The language can have no other meaning than that the State may "resume" lands which have not been patented, or the title conveyed to plaintiff by some other act. Such lands would be "undisposed of."

Under section 6 of the act now under consideration (chapter 58, Acts Twelfth General Assembly), the plaintiff is entitled to receive four hundred and fifty sections, being two hundred and eighty-eight thousand acres of land, for building the road to Algona. It is shown that there are three hundred and ten thousand acres of land subject to the grant of Congress, over and above the lands in controversy. Now if the construction of the road to Algona would require us to regard, under section 6, two hundred and eighty-eight thousand acres as "disposed

of," that quantity is found without considering the lands in controversy. Such disposition would not be of lands of any specific description, but would attach to lands of the grant generally. The State would be required, in the proper discharge of its trust, to patent or otherwise convey to plaintiff such lands as the Sioux City & St. Paul Railroad Company, or other corporations or persons, do not claim. In other words, there are lands covered by the grant exceeding the amount earned by plaintiff in constructing the road to Algona, other than the lands in controversy. If, under section 6, there has been a disposition of the lands, it must be regarded as of such as are not involved in this suit.

III. There are other questions in the case discussed by counsel. Among them are these: *First*. Is the plaintiff entitled to lands situated along the route of its road beyond the completed portions; in other words, must the territory from which the lands are selected to be patented to plaintiff, for its constructed road, be co-terminus on the west with such part of the road as is completed? *Second*. Which of the contesting corporations, plaintiff or the Sioux City Railroad Company, is entitled to the lands in the "overlapping" limits, or are these lands to be regarded as having been granted to both the corporations in common, each being entitled to equal moieties? These and other questions need not be determined, as the case is disposed of by the view we take of the law above presented. Indeed, it would not be proper to decide these questions now, as our decision thereon might not alone lead to a determination of this case. While it may be a matter of interest to the parties to this suit to have a determination of these questions, that can only be properly made in a case the decision whereof rests upon it.

IV. We are not called upon to pass upon questions involving the right of the Sioux City & St. Paul Railroad Company to the lands in question. Plaintiff cannot be entitled to relief in this case on the ground that the other corporation has no right to the land, if such should prove to be the case.

While the answer of the defendants asks, as in a cross-bill, the relief that the lands in controversy may be declared to be vested in the Sioux City & St. Paul Railroad Company, it was not granted by the decree in the court below.   Indeed, it does not appear that the court below was asked to pass upon the case with a view to grant relief to defendants, or that any questions involved in such relief were presented to and passed upon by the court below.   While the decree grants no relief to defendants, it does not deny it, nor are their cross-bills dismissed.   It appears that at the trial the right of defendants to relief was not urged.   Indeed, it was not regarded that any point or question in the law was decided adversely to defendants.   No appeal was taken by them from the decree of the court below, and we are not asked in any form, in argument or otherwise, to grant relief of any character.   It is, therefore, not our duty to pass upon the questions involving the rights of defendants.

The decree of the Circuit Court is

AFFIRMED.